**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **FORTUNE FUNDING, LLC,**<br><br>**Plaintiffs,**<br><br>**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation,**<br><br>**Intervenor-Plaintiff,**<br><br>**v.**<br><br>**CERIDIAN CORPORATION, a Delaware corporation,**<br><br>**Defendant.** | **File No. 001809DSD/FLN**<br><br>**STIPULATION AND ORDER ALLOWING INTERVENOR-PLAINTIFF'S MOTION TO SERVE AND FILE A FIRST AMENDED COMPLAINT** |

The parties to this action, by and through counsel, stipulate that the court may enter an Order allowing Intervenor-Plaintiff, The Prudential Insurance Company of America, to serve and file a First Amended Complaint in the form attached as Exhibit A, along with the Exhibits that were attached to its original Complaint.

Dated: May 18, 2001

By: ____________________
D. Charles Macdonald (#151385)
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Tel: (612) 336-3000

William H. Hughes, Jr. (pro hac vice)
Brian K. Fielden (pro hac vice)
Alston & Bird, LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Attorneys for Intervenor-Plaintiff

FILED 6-5-01
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

ATL01/10971853v1

Dated: ~~May~~ June 1, 2001

By: ______________________
Gary A. Van Cleve
Larkin, Hoffman, Daly & Lindgren, Ltd.
1500 Norwest Financial Center
7900 Xerxes Avenue South
Bloomington, Minnesota 55431-1194
(952) 835-3800
Attorneys for Plaintiff

Dated: May 31, 2001

By: ______________________
Steven J. Wells
Dorsey & Whitney
Pillsbury Center South
220 South Sixth Street, Suite 1300
Minneapolis, MN 55402-1498
(612) 340-2600
Attorneys for Defendant

**ORDER**

Based on the above stipulation of counsel, IT IS HEREBY ORDERED THAT:

Interventor-Plaintiff's Motion to Amend is granted. Interventor-Plaintiff, The Prudential Insurance Company of America, may file and serve the First Amended Complaint in the form attached as Exhibit A, along with the Exhibits that were attached to its original Complaint.

Dated: June 4, 2001

______________________
FRANKLIN L. NOEL
Chief Magistrate Judge

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **FORTUNE FUNDING, LLC,**<br><br>**Plaintiffs,**<br><br>**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation,**<br><br>**Intervenor-Plaintiff,**<br><br>**v.**<br><br>**CERIDIAN CORPORATION, a Delaware corporation,**<br><br>**Defendant.** | ) | **File No. 001809DSD/FLN** |

**FIRST AMENDED COMPLAINT OF INTERVENOR-PLAINTIFF**

The Intervenor-Plaintiff, The Prudential Insurance Company of America ("Prudential"), complaining of the Defendant, alleges and says as follows:

**PARTIES AND JURISDICTION**

1. Prudential is a New Jersey corporation with its principal place of business in Newark, New Jersey.

2. Fortune Funding, LLC ("Fortune") is a Florida limited liability company with its principal place of business located in the State of New York. Upon information and belief, Fortune owns the improvements that are the subject matter of this lawsuit, comprising of four buildings and other related improvements commonly known as 8100 Tower and Atrium Center buildings located at 3105 East 80th Street and 8100 34th

Avenue South, in the City of Bloomington, County of Hennepin, State of Minnesota (the "Leased Premises").

3. Defendant Ceridian Corporation ("Ceridian") is a Delaware corporation with its principal place of business located in Minnesota.

4. This court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Venue properly lies in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

**FACTUAL BACKGROUND**

6. Upon information and belief, the four buildings comprising the Leased Premises were built in 1962, 1964, 1965 and 1971.

7. Upon information and belief, Ceridian was the original owner and occupier of the Leased Premises and occupied the same from the time the buildings and related improvements comprising the Leased Premises were constructed through the date the Ceridian Lease was executed.

8. In July 1985, Defendant Ceridian, then known as Control Data Corporation, sold the Leased Premises to Minnesota UTF, II, a Florida general partnership, as part of a sale-leaseback transaction.

9. As part of the transaction, Ceridian entered into a 15-year lease agreement with Minnesota UTF, II for the Leased Premises dated July 29, 1985 (the "Ceridian Lease"). A copy of the Ceridian Lease is attached hereto as Exhibit A.

10. Upon information and belief, shortly after purchasing the Leased Premises, Minnesota UTF, II sold its interest to I. Reiss & Son.

11. Upon information and belief, in December 1985, I. Reiss & Son sold its lessor's interest in the Leased Premises to Fortune Funding Company, a Florida general partnership and predecessor-in-interest to Fortune, and Fortune Funding Company acquired the interest subject to the Prudential loan described below.

12. Upon information and belief, as part of the sale transaction with I. Reiss & Son, Fortune Funding Company, and later, Fortune, became the lessor under the Ceridian Lease with Ceridian.

13. Simultaneously with the execution of the Ceridian Lease in July 1985, Prudential financed Minnesota UTF, II's purchase of the Leased Premises through a non-recourse loan in the amount of $40,500,000 in exchange for a promissory note (the "Note") and Combination Mortgage, Security Agreement and Fixture Financing Statement (the "Security Agreement") dated July 29, 1985. Copies of the Note and Security Agreement are attached hereto as Exhibits B and C, respectively.

14. As further security for the Note, and as a condition precedent to making the loan evidenced by the Note, Minnesota UTF, II executed and delivered to Prudential an Assignment of Rents and Leases also dated July 29, 1985, granting to Prudential a present assignment of all of its right, title and interest to, among other things, the Ceridian Lease and:

> "all rents, issues, profits and other payments of any kind due and payable and to become due and payable under the [Ceridian Lease] . . . , including without limitation . . . any damage or termination payments with respect to the [Ceridian Lease] . . . ([the] "Rentals"), whether such Rentals accrue before or after foreclosure of the mortgage or during any period of redemption therefrom, for the purpose of securing payment of all indebtedness evidenced by the Note and all other sums secured by the Mortgage".

(the "Assignment") (Assignment, p. 1, ¶ 5). A copy of the Assignment is attached hereto as Exhibit D.

15. The Assignment grants to Prudential an immediate and continuing right to collect and receive the "Rentals" directly from Ceridian regardless of whether any event of default exists under the Note or Security Agreement and to apply such Rentals to the payment of amounts due and payable under the Note (Assignment, p. 2, ¶ B.1). The Assignment also authorizes and instructs Ceridian to pay all "Rentals" directly to Prudential as designated by Prudential (Assignment, p. 1, ¶ B.3).

16. The Assignment further precludes the Assignor thereunder (now Fortune) from modifying the Ceridian Lease, waiving or in any manner releasing or discharging Ceridian from any obligations under the Ceridian Lease, collecting or seeking to collect the "Rentals" from Ceridian or directing Ceridian to pay the "Rentals" to a party other than Prudential. Any such actions without Prudential's express written consent are null and void. *Id.*

17. Fortune acknowledged and ratified its obligations under the Note, Security Agreement and Assignment pursuant to that certain Lockbox Account and Disbursement Account Agreement with Prudential, dated as of August 1, 2000 (the "Lockbox Agreement") (see ¶ 11(a) of the Lockbox Agreement). A copy of the Lockbox Agreement is attached hereto as Exhibit E.

18. Ceridian acknowledged its receipt of a fully executed copy of the Assignment and further agreed to remit directly to Prudential all "Basic Rent, additional rent and all other sums payable under the Lease" in an Acknowledgement and Agreement document dated July 29, 1985, (the "Ceridian Acknowledgement and Agreement"). A copy of the Ceridian Acknowledgement and Agreement is attached hereto as Exhibit F.

19. On July 29, 1995, counsel for Ceridian issued an opinion letter to Prudential and Fortune's predecessor-in-interest stating that the Ceridian Lease and the Ceridian Acknowledgement were the "legal, valid and binding obligation of [Ceridian], enforceable against [Ceridian] in accordance with their terms . . ." (the "Ceridian Attorney Opinion Letter"). A copy of the Ceridian Attorney Opinion Letter is attached hereto as Exhibit G.

20. Section 1.1 of the Ceridian Lease states in part that "Lessee has examined the Premises and . . . found all of the same satisfactory for all purposes."

21. Section 2.1(a) of the Ceridian Lease states in part that "Lessee acknowledges that it has received the Premises in good order and repair."

22. Section 2.1(a) of the Ceridian Lease requires Ceridian to take all action and to make all structural and nonstructural, foreseen and unforeseen and ordinary and extraordinary changes and repairs which may be required to keep all parts of the Premises in good repair and condition, and provides that the Lessor, Fortune, has no obligation to maintain, rebuild or repair any part of the Leased Premises.

23. Section 2.2 of the Ceridian Lease only permits alterations to the Leased Premises by Ceridian on the condition that "(i) the fair market value of the Premises shall

not be lessened thereby, (ii) such work shall be expeditiously completed in a good and workmanlike manner . . ..”

24. To induce Prudential to finance the purchase of the Leased Premises, Ceridian represented to Prudential through a document dated July 29, 1985, that “no default exists under the [Ceridian] [L]ease . . .”, including any of the above-listed representations with respect to the condition of the Leased Premises and Ceridian's obligations under Section 2.1(a) of the Ceridian Lease. (the “Ceridian Estoppel Certificate”). A copy of the July 29, 1985 Ceridian Estoppel Certificate is attached hereto as Exhibit H.

25. To induce Prudential to finance the purchase of the Leased Premises, Ceridian represented to Prudential on July 29, 1985 through the Ceridian Estoppel Certificate that, “[t]he landlord under the Lease has fully performed all of its obligations relating to construction of the Premises and leasehold improvements therein . . ..”

26. Through a letter to Fortune dated December 10, 1985, Ceridian represented that it "has no knowledge of any default under the lease", including any of the above-listed representations with respect to the condition of the Leased Premises and Ceridian's obligations under Section 2.1(a) of the Ceridian Lease. A copy of the December 10, 1985 letter is attached hereto as Exhibit I.

27. On June 13, 2000, Fortune sent written notice to Ceridian requesting that it immediately make repairs to several conditions concerning the Leased Premises as required by Section 2.1 of the Ceridian Lease. A copy of Fortune's written notice to Ceridian is attached hereto as Exhibit J.

28. On July 19, 2000, Ceridian responded to Fortune's June 13, 2000 letter and denied that it had breached its obligations under Section 2.1(a) of the Ceridian Lease. A copy of Ceridian's July 19, 2000 letter is attached hereto as Exhibit K.

29. Ceridian has not cured the conditions described in Fortune's June 13, 2000 written notice as required by Section 2.1 of the Ceridian Lease and is therefore in default.

30. The term of the Ceridian Lease expired on July 29, 2000; however, Section 9.2 of the Ceridian Lease expressly provides that the obligation by Ceridian to surrender the Leased Premises "in the condition in which the Premises were originally received from Lessor, except as repaired, rebuilt, restored, altered or added to as permitted or required hereby and except for ordinary wear and tear....shall survive the expiration or other termination of the Lease."

31. A default presently exists under the Note due to Fortune's failure to pay the balance due at maturity on July 29, 2000. Prudential provided written notice to Fortune of this default through it counsel, Alston & Bird, LLP by letter dated July 31, 2000 (the "Default Notice"). A copy of the Default Notice is attached hereto as Exhibit L. The balance due on the Note remains unpaid and the Security Agreement provides that failure to pay sums due under the Note becomes a "Event of Default" if the failure is not cured within 10 days of written notice (See ¶ 23.1(a) of the Security Agreement).

32. Prudential has complied with all conditions necessary to enforce the Assignment pursuant to Minn. Stat. § 559.17. Prudential properly recorded a Notice of Default on August 23, 2000 in the Office of the Hennepin County Recorder and in the Office of the Hennepin County Registrar of Titles and served the same upon Ceridian

(the "Statutory Notice of Default"). A copy of the Statutory Notice of Default together with its service letter are attached hereto as Exhibit M.

33. Section 9.10 of the Ceridian Lease expressly obligates Ceridian upon notice to pay rent and all other sums due under the Ceridian Lease over to the mortgagee holding the Assignment of Leases and Rents of even date with the Ceridian Lease, i.e. the Assignment to Prudential. The Ceridian Acknowledgement also obligates Ceridian to pay rent and all other sums due under the Ceridian Lease directly to Prudential.

34. As a result of the foregoing, Prudential has the present and exclusive right to recover from Ceridian any amounts that are due under the Ceridian Lease, including any amounts found to be due in this action.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract – Maintenance and Repair Obligation)**

35. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 32 of the Amended Complaint into this Claim for Relief.

36. Section 1.1 of the Ceridian Lease states in part that "Lessee has examined the Premises and . . . found all of the same satisfactory for all purposes."

37. Section 2.1(a) of the Ceridian Lease states in part that "Lessee acknowledges that it has received the Premises in good order and repair."

38. Section 2.1(a) of the Ceridian Lease requires Ceridian to take all action and to make all structural and nonstructural, foreseen and unforeseen and ordinary and extraordinary changes and repairs which may be required to keep all parts of the Premises in good repair and condition, and provides that the Lessor, Fortune, has no obligation to maintain, rebuild or repair any part of the Leased Premises.

39. Ceridian has materially breached the Ceridian Lease by failing to make required changes and repairs to the Leased Premises pursuant to Section 2.1 of the Ceridian Lease.

40. Under the Assignment and as a result of Fortune's breach of the Note and Security Agreement, as confirmed by Section 9.10 of the Ceridian Lease and the Ceridian Acknowledgement, Prudential is the sole party entitled to recover damages from Ceridian based on this breach of the Ceridian Lease.

41. As a direct and proximate result of Ceridian's material breach of the Ceridian Lease, Prudential has sustained damages in an amount in excess of $75,000, the exact amount to be determined at the time of trial.

42. Prudential is also entitled to recover its attorneys' fees and expenses incurred in connection with this lawsuit pursuant to Section 7.3(d) of the Ceridian Lease.

**<u>SECOND CLAIM FOR RELIEF</u>**
**(Breach of Contract – Alterations and Additions to Leased Premises )**

43. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 40 of the Amended Complaint into this Claim for Relief.

44. Section 2.2 of the Ceridian Lease only permits alterations to the Leased Premises by Ceridian on the condition that "(i) the fair market value of the Premises shall not be lessened thereby, (ii) such work shall be expeditiously completed in a good and workmanlike manner . . .."

45. Upon information and belief, Ceridian made additions and alterations to the Leased Premises that were not completed in a good condition and workmanlike manner or that did lessen the Fair Market Value of the Leased Premises.

46. Upon information and belief, such work was not completed in a good and workmanlike manner.

47. As a result of the foregoing, Ceridian has materially breached the Ceridian Lease by failing to comply with Section 2.2 of the Ceridian Lease.

48. Under the Assignment and as a result of Fortune's breach of the Note and Security Agreement, as confirmed by Section 9.10 of the Ceridian Lease and the Ceridian Acknowledgement, Prudential is the sole party entitled to recover damages from Ceridian based on this breach of the Ceridian Lease.

49. As a direct and proximate result of Ceridian's material breach of the Ceridian Lease, Prudential has sustained damages in an amount in excess of $75,000, the exact amount to be determined at time of trial.

50. Prudential is also entitled to recover its attorneys' fees and expenses incurred in connection with this lawsuit pursuant to Section 7.3(d) of the Ceridian Lease.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract – Surrender Obligation)**

51. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 48 of the Amended Complaint into this Claim for Relief.

52. Section 1.1 of the Ceridian Lease states in part that "Lessee has examined the Premises and . . . found all of the same satisfactory for all purposes."

53. Section 2.1(a) of the Ceridian Lease states in part that "Lessee acknowledges that it has received the Premises in good order and repair."

54. Section 9.2 of the Ceridian Lease provides that Ceridian shall surrender the Leased Premises "in the condition in which the Premises were originally received from Lessor, except as repaired, rebuilt, restored, altered or added to as permitted or

required hereby and except for ordinary wear and tear....[and this obligation] shall survive the expiration or other termination of this Lease."

55. The term of the Ceridian Lease expired on July 29, 2000.

56. Ceridian has materially breached the Ceridian Lease by failing to surrender the Leased Premises in the condition required by Section 9.2 of the Ceridian Lease.

57. Under the Assignment and as a result of Fortune's breach of the Note and Security Agreement, as confirmed by Section 9.10 of the Ceridian Lease and the Ceridian Acknowledgement, Prudential is the sole party entitled to recover damages from Ceridian based on this breach of the Ceridian Lease.

58. As a direct and proximate result of Ceridian's material breach of the Ceridian Lease, Prudential has sustained damages in an amount in excess of $75,000, the exact amount to be determined at time of trial.

59. Prudential is also entitled to recover its attorneys' fees and expenses incurred in connection with this lawsuit pursuant to Section 7.3(d) of the Ceridian Lease.

**FOURTH CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation)**

60. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 57 of the Amended Complaint into this Claim for Relief.

61. Upon information and belief, the four buildings comprising the Leased Premises were built in 1962, 1964, 1965 and 1971.

62. Upon information and belief, Ceridian was the original owner and occupier of the Leased Premises and occupied the same from the time the buildings and

related improvements comprising the Leased Premises were constructed through the date the Ceridian Lease was executed.

63. As a result, Ceridian was in a position to have capable knowledge of the condition of the Leased Premises at the time the Ceridian Lease was executed.

64. To induce Prudential to finance the purchase of the Leased Premises, Ceridian represented to Prudential on July 29, 1985, through the Ceridian Lease that Ceridian "has examined the Premises and . . . found all of the same satisfactory for all purposes."

65. To induce Prudential to finance the purchase of the Leased Premises, Ceridian further represented to Prudential on July 29, 1985, through the Ceridian Lease that it "acknowledges that it has received the Premises in good order and repair."

66. To induce Prudential to finance the purchase of the Leased Premises, Ceridian represented to Prudential through the July 29, 1985, Ceridian Estoppel Certificate that "no default exists under the [Ceridian] [L]ease . . .", including the representations in the Ceridian Lease with respect to the condition of the Leased Premises and Ceridian's obligations under Section 2.1(a) of the Ceridian Lease.

67. To induce Prudential to finance the purchase of the Leased Premises, Ceridian further represented to Prudential on July 29, 1985 through the Ceridian Estoppel Certificate that, "[t]he landlord under the Lease has fully performed all of its obligations relating to construction of the Premises and leasehold improvements therein . . .."

68. Ceridian made these representations knowing they were false, or asserted such representations as of its own knowledge without knowing whether they were true or false.

69. Ceridian made the aforementioned false representations of present facts during the course of the sale, purchase, lease and financing of the Leased Premises.

70. The factual content of these false representations were material to the sale, purchase and lease of the Leased Premises and to Prudential's decision to finance the purchase of the Leased Premises.

71. Ceridian intended to induce Prudential to act in reliance upon these false representations in determining whether to finance the purchase of the Leased Premises.

72. Prudential in fact acted in reliance upon Ceridian's false representations in determining whether to finance the purchase of the Leased Premises, and Prudential's reliance was justifiable.

73. As a direct and proximate result of Ceridian's false representations, Prudential has sustained damages in an amount in excess of $75,000, the exact amount to be determined at the time of trial.

## FIFTH CLAIM FOR RELIEF
## (Negligent Misrepresentation)

74. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 66 of the Amended Complaint into this Claim for Relief.

75. Ceridian made the false representations set forth in Paragraphs 64, 65, 66 and 67 above in the course of a transaction in which it had a pecuniary interest: the sale, purchase, lease and financing of the Leased Premises.

76. Ceridian made these false representations for the guidance of Prudential in determining whether to finance the Leased Premises.

77. As a result, Ceridian had a duty to exercise reasonable care or competence in discovering, obtaining and communicating information to Prudential regarding the

condition of the Leased Premises or other default under the Ceridian Lease in connection with the sale, purchase, lease and financing transactions involving the Leased Premises.

78. Ceridian breached the aforementioned duty owed to Prudential by failure to use reasonable care and competence in discovering, obtaining and communicating the factual content of these false representations.

79. Prudential in fact acted in reliance upon Ceridian's false representations in determining whether to finance the purchase of the Leased Premises, and Prudential's reliance was justifiable.

80. As a direct and proximate result of the Ceridian's breach of the aforementioned duty owed to Prudential, Prudential has sustained damages in an amount in excess of $75,000, the exact amount of damages to be determined at the time of trial.

**SIXTH CLAIM FOR RELIEF**
**(Common Law Waste)**

81. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 73 of the Amended Complaint into this Claim for Relief.

82. Prudential has a significant interest in the Leased Premises by virtue of the Note, Security Agreement and Assignment.

83. By virtue Prudential's interest in the Property, Ceridian, as a possessor of the Leased Premises, owed a duty to Prudential to prevent unreasonable abuse or neglect to the Leased Premises.

84. As the mortgagee of the Leased Premises and holder of the Assignment, Prudential had reasonable expectations that Ceridian would comply with its obligations under the Ceridian Lease pertaining to repair, surrender and alteration of the Leased

Premises and would not otherwise negligently or intentionally destroy, alter, misuse or neglect the Leased Premises.

85. Ceridian breached its duty by negligently or intentionally destroying, altering, misusing and/or neglecting the Leased Premises to the detriment of Prudential's interest in the Leased Premises.

86. Ceridian's negligent or intentional destruction, alteration, misuse and neglect of the Leased Premises to the detriment of Prudential's interest constitutes common law waste and has resulted in material damage to the Leased Premises.

87. As a direct and proximate result of Ceridian's waste, Prudential has sustained damages in an amount in excess of $75,000, the exact amount to be determined at the time of trial.

**SEVENTH CLAIM FOR RELIEF**
**(Statutory Waste – Minn. Stat. § 561.17)**

88. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 80 of the Amended Complaint into this Claim for Relief.

89. Ceridian, as a lessee, was a tenant for years of the Leased Premises.

90. Ceridian committed waste by negligently or intentionally destroying, altering, misusing and/or neglecting the Leased Premises to the detriment of Prudential's interest in the Leased Premises.

91. These actions by Ceridian have caused material damages to the Leased Premises.

92. As a direct and proximate result of Ceridian's waste, Prudential has sustained damages in an amount in excess of $75,000 and is entitled to recover such

damages pursuant to Minn. Stat. § 561.17, the exact amount to be determined at the time of trial.

93. Pursuant to Minn. Stat. § 561.17, Prudential is entitled to recover treble damages on any such amount awarded.

**EIGHTH CLAIM FOR RELIEF**
**(Consumer Fraud Act)**

94. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 86 of the Amended Complaint into this Claim for Relief and specifically the allegations in its FOURTH CLAIM FOR RELIEF (Fraudulent Misrepresentation) and its FIFTH CLAIM FOR RELIEF (Negligent Misrepresentation).

95. Ceridian's made the false representations in Paragraphs 64, 65, 66 and 67 above with the intent that Prudential act in reliance thereon in connection with the financing of the Leased Premises, in violation of Minn. St. §325F.69, subd. 1. ("The Consumer Fraud Act").

96. As a direct and proximate result of Ceridian's false representations in violation of the Consumer Fraud Act, Prudential has suffered damages in an amount in excess of $75,000, the exact amount to be determined at the time of trial.

97. Based on Ceridian's violations of the Consumer Fraud Act, Prudential is entitled, pursuant to Minn. St. §8.31, subd. 3a., to recover damages from Ceridian, costs, disbursements, costs of investigations and reasonable attorney's fees and is entitled to other equitable relief as determined by this court.

**NINTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty)**

98. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 97 of the Amended Complaint into this Claim for Relief.

99. Section 2.1(a) of the Ceridian Lease requires Ceridian, as lessee, to take all action and to make all structural and nonstructural, foreseen and unforeseen and ordinary and extraordinary changes and repairs which may be required to keep all parts of the Premises in good repair and condition.

100. Section 2.1(a) of the Ceridian lease provides that the Lessor has no obligation to maintain, rebuild or repair any part of the Leased Premises.

101. Through the Ceridian Lease, Ceridian manifested its consent to act on behalf of Fortune and Prudential in making all repairs to and ensuring all maintenance of the Ceridian Building as required by the Ceridian Lease.

102. Through the Ceridian Lease, Ceridian was aware that Fortune and Prudential had placed in Ceridian a special trust and confidence to make all changes and repairs and ensure all maintenance necessary to preserve all parts of the Ceridian Building in good repair and condition.

103. As a result, Ceridian owed to Fortune and Prudential a fiduciary duty with respect to changing, repairing and maintaining the Leased Premises as required by the Ceridian Lease.

104. As part of this fiduciary duty, Ceridian was obligated to disclose to Fortune and Prudential all material facts regarding the condition of the Leased Premises.

105. Ceridian's failure to change, maintain and repair the Leased Premises as required by the Ceridian Lease constitutes a breach of its fiduciary duty owed to Fortune and Prudential.

106. Ceridian's commissions of waste on the Leased Premises constitute a breach of its fiduciary duty owed to Fortune and Prudential.

107. Ceridian's failure to disclose material facts pertaining to the condition of the Leased Premises constitutes a breach of its fiduciary duty owed to Fortune and Prudential.

108. Under the Assignment and as a result of Fortune's breach of the Note and Security Agreement, as confirmed by Section 9.10 of the Ceridian Lease and the Ceridian Acknowledgement, Prudential is the sole party entitled to recover damages from Ceridian based on these breaches of its fiduciary duty owed to Fortune and Prudential.

109. As a direct and proximate result of Ceridian's breaches of its fiduciary duty owed to Fortune and Prudential, Prudential has sustained damages in an amount in excess of $75,000, the exact amount to be determined at time of trial.

## CROSS-CLAIM FOR DECLARATORY JUDGMENT

For its Cross-Claim against Fortune, Prudential alleges and says as follows:

110. Prudential incorporates by reference herein the allegations contained in Paragraphs 1 through 109 of the Amended Complaint into this Cross-Claim.

111. Fortune contends in its Complaint that it is entitled to prosecute the claims of the Landlord under the Ceridian Lease.

112. Under the Assignment and as a result of Fortune's breach of the Note and Security Agreement, as confirmed by Section 9.10 of the Ceridian Lease and the Ceridian

Acknowledgement, Prudential is the sole party entitled to prosecute these claims and to recover any damages awarded thereon.

113. There is an actual and justiciable controversy between Prudential and Fortune as to who is entitled to prosecute these claims and to recover any damages awarded thereon.

114. Prudential is entitled to a Declaratory Judgment of this court under the Declaratory Judgment Act, 28 U.S.C. § 2201 declaring that, based on the Assignment, Prudential is the sole party entitled to prosecute the claims of the Landlord under the Ceridian Lease and to recover any damages awarded thereon.

WHEREFORE, Prudential requests judgment against Defendant Ceridian and against Plaintiff Fortune as follows:

1. Awarding Prudential damages from Ceridian in an amount in excess of $75,000.00, a more exact amount to be determined at trial, sustained as a consequence of Ceridian's breaches of the Ceridian Lease, Fraudulent Misrepresentations, Negligent Misrepresentations, commission of Waste of the Leased Premises, violation of the Consumer Fraud Act and Breach of Fiduciary Duty;

2. Awarding Prudential treble damages Ceridian on any recovery under its claim for Statutory Waste pursuant to Minn. Stat. § 561.17.

3. Awarding Prudential its costs, expenses, disbursements and reasonable attorneys' fees incurred in bringing this action.

4. Declaring that, based on the Assignment, Prudential is the sole party entitled to prosecute the claims of the Landlord under the Ceridian Lease and to recover any damages awarded thereon.

5. Granting such other and further relief as the Court deems just and equitable.

This the ___ day of May 2001.

FAEGRE & BENSON LLP

By: ______________________________

D. Charles Macdonald (#151385)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Tel: (612) 336-3000

William H. Hughes, Jr. (pro hac vice)
Brian K. Fielden (pro hac vice)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000