UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-1809(DSD/FLN)

Fortune Funding, LLC, a Florida limited liability company,

Plaintiff,

v.

**ORDER**

Ceridian Corporation,

Defendant,

and

Prudential Insurance Company of America,

Intervenor.

Gary VanCleve, Esq., James M. Susag, Esq. and Larkin, Hoffman, Daly & Lindgren, 1500 Wells Fargo Plaza, 7900 Xerxes Avenue South, Bloomington, MN 55431, counsel for plaintiff.

Steven J. Wells, Esq., Randall R. Frykberg, Esq., Eric J. Moutz, Esq. and Dorsey & Whitney, 50 Sixth Street South, Suite 1500, Minneapolis, MN 55402, counsel for defendant.

Keith S. Moheban, Esq. and Leonard, Street & Deinard, 150 Fifth Street South, Suite 2300, Minneapolis, MN 55402, counsel for HealthPartners, Inc.

Donald C. Macdonald, Esq. and Faegre & Benson, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402 and William H. Hughes, Esq., Brian K. Fielden, Esq. and Alston & Bird, 4200 One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309, counsel for Prudential.

FILED 4-2-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ____________
Deputy Clerk's Initials ______

This matter is before the court upon a motion for partial summary judgment by plaintiff Fortune Funding, LLC ("Fortune") against defendant Ceridian Corporation ("Ceridian"), upon a motion for summary judgment by plaintiff Fortune against intervenor-plaintiff Prudential Insurance Company of America ("Prudential"), upon a motion for summary judgment by Prudential against Fortune, upon a motion by Ceridian for partial summary judgment against Fortune and Prudential and upon a motion by Prudential for an order to submit a supplemental affidavit in opposition to Ceridian's motion for partial summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court (1) grants Ceridian's motion for summary judgment on Counts 1-4 of Fortune's second amended complaint as it relates to the Tower curtain wall, the Tower elevators and the alleged leakage in the Tower plaza decks (2) denies Ceridian's motion for summary judgment on Count 5 of Fortune's second amended complaint, (3) grants Ceridian's motion for summary judgment on Counts 6 and 7 of Fortune's second amended complaint,(4) grants Ceridian's motion for summary judgment on Counts 1-3, 6 and 7 of Prudential's first amended complaint as they relate to the Tower curtain wall, the Tower elevators and the Tower plaza decks, (5) denies Ceridian's motion for summary judgment on Count 4 of Prudential's first amended complaint,(6) grants Ceridian's motion for summary judgment on Counts 5, 8 and 9 of Prudential's first amended

complaint, (7) denies Fortune's motion for summary judgment against Ceridian, (8) denies as moot Fortune's motion for summary judgment against Prudential, (9) denies as moot Prudential's motion for summary judgment against Fortune, and (10) grants Prudential's motion to submit a supplemental affidavit.

## BACKGROUND

Defendant Ceridian owned and then leased property at 8100 East 34Th Street, Bloomington, Minnesota, its international headquarters. Ceridian leased the property from plaintiff Fortune from 1985 to 2000. Intervenor-plaintiff Prudential is the current mortgagor. Fortune sued Ceridian alleging breach of contract, waste, intentional and negligent misrepresentation, and consumer fraud. Prudential also seeks to recover from Ceridian for breach of contract, stautory and common-waste, fraud, and breach of fiduciary duty in connection with the sale/leaseback of the building. Additionally, Prudential and Fortune both seek to establish their respective right to make a claim for damages against Ceridian under a lease agreement between Fortune and Ceridian.

### I. History of the Property

In 1971, Ceridian (formerly Control Data Corp.) built a 14-story office tower ("the Tower") which it used for its international headquarters. Almost immediately, the exterior of the Tower, a glass and steel frame "envelope" known as curtainwall

construction, leaked water during rainstorms. The glass also cracked, fogged and broke. Ceridian sued several defendants and entered two separate settlement agreements, releasing the defendants from liability. In 1983, Ceridian attempted to prevent further water intrusion by applying a sealant to the exterior curtain wall ("caulking"). (Ceridian's Mem. Supp. Part. Summ. J. at 3). Ceridian contends that a sealant contractor had caulked much of the Tower by 1985. (Ceridian's Mem. Supp. Part. Summ. J. at 3). Fortune, however, asserts that few areas of the Tower had been caulked in the late summer of 1984, that there was no caulking in 1985, and that caulking did not resume until at least the end of 1986. (Fortune's Mem. Supp. Part. Summ. J. Against Ceridian at 8).

## II. The Sale-Leaseback Transaction

In 1985, Ceridian negotiated with United Trust Fund, LLC ("UTF") for the sale and leaseback of the Tower, other buildings, and the surrounding parking lots. Prior to any final contracts, Ceridian asserts that it disclosed the curtainwall leakage problem and its attempts to remedy it to UTF in a letter from Ceridian's Robert Darr to UTF's James Nolan, orally and in an appraisal that was provided to UTF. (Ceridian's Mem. Supp. Part. Summ. J. at 4). Following these disclosures and an inspection of the buildings, UTF purchased the property.

Ceridian and a UTF affiliate then entered into a 15-year lease agreement that allowed Ceridian to continue to use the property. The three relevant provisions of the lease agreement provide:

Section 2.1. <u>Maintenance and Repair</u>.

> (a) [Ceridian] acknowledges it received the Premises in good order and repair. [Ceridian], at its own expense, will maintain all parts of the Premises in good repair and condition, except for ordinary wear and tear ... which may be required to keep all parts of the Premises in good repair and condition ... in as good a condition as they existed at the beginning of the Primary term, ordinary wear and tear excepted. (Dieke Aff., Ex. A, Dep. Ex. 123 at 5.)

Section 2.2. <u>Maintenance and Repair</u>.

> [Ceridian] <u>may</u>, at its expense, make additions to and alterations of the Improvements, and construct additional Improvements, provided that (i) the fair market value of the Premises shall not be lessened thereby, (ii) such work shall be expeditiously completed in a good and workmanlike manner and in compliance with all applicable Legal Requirements and the requirements of all insurance policies required to be maintained by Lessee hereunder, and (iii) no structural alterations shall be made to the Improvements or demolitions conducted in connection therewith ... unless Lessee shall have first notified Lessor in writing thereof ... (Dieke Aff., Ex. A, Dep. Ex. 123 at 6.)

Section 9.2. <u>Surrender</u>.

> Upon the expiration or termination of this Lease, Lessee shall surrender the Premises to Lessor in the condition in which the Premises were originally received from Lessor, except

> as repaired, rebuilt, restored, altered or added to as permitted or required hereby and except for ordinary wear and tear.... (Dieke Aff., Ex. A, Dep. Ex. 123 at 35.)

Plaintiff Prudential financed UTF's purchase of the property. The loan by Prudential was memorialized through a promissory note and was secured by a combination mortgage, security agreement and fixture financing statement and an assignment of rents and leases. Ceridian delivered to Prudential an estoppel certificate indicating no existing defaults under the lease agreement.

**III. Subsequent Purchasers**

In late 1985, UTF sold the Property to I. Reiss and Sons ("Reiss"), a real estate company. Following this transaction, Reiss sold the buildings on the property to Fortune. While Reiss maintained ownership of the underlying land, Fortune became the lessor under the Ceridian lease.

In purchasing the premises, Fortune asserts that it relied on the maintenance and repair provision in the Ceridian lease agreement. (Fortune Mem. Supp. Part. Summ. J. Against Prudential at 4). According to Ceridian, Fortune did not negotiate with UTF or Ceridian and never inspected the property before purchasing it. (Ceridian Mem. In Resp. to Fortune's Mem. for Part. Summ. J. at 5). As part of the purchase of the leased premises, Fortune received an estoppel certificate from Ceridian stating that it was not in default on the Ceridian lease.

In 1992, Ceridian and Fortune entered into a three-way agreement with HealthPartners to sublease a substantial portion of the Tower to them for their office headquarters. The lease contained a provision addressing the curtainwall water leakage problem. (Ceridian Mem. Supp. Part. Summ. J. at 8).

**IV. Legal Action**

On June 13, 2000, approximately one month before the Ceridian lease expired, Fortune requested that Ceridian make repairs on the leased premises. On July 19, 2000 Ceridian refused to make the repairs, stating that the premises were in as good condition as they were at the beginning of the lease term, ordinary wear and tear excepted. After the lease expired, Fortune brought this action. At approximately the same time, Fortune defaulted on its note of approximately $30 million to Prudential, which foreclosed on its mortgage. During the foreclosure proceedings, Prudential was the sole bidder, at $13.5 million, for the leased premises at a sheriff's sale.

Plaintiff Fortune now moves for partial summary judgment against Ceridian on the sole issue of the scope of Ceridian's repair and maintenance obligations under the lease. Prudential moves for partial summary judgment against Fortune asserting that Fortune's claims for damage were assigned to Prudential. Similarly, Ceridian moves for partial summary judgment against both Fortune and Prudential on their claims of breach of fiduciary duty,

fraudulent misrepresentation, negligent misrepresentation, consumer fraud, the breach of contract and waste claims. The court grants Ceridian's motion for partial summary judgment in part, denies Fortune's motion for partial summary judgment against Ceridian, denies as moot the cross-claims for summary judgment by Fortune and Prudential, and grants Prudential's motion to file a supplemental affidavit.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Ceridian's Motion for Summary Judgment Against Fortune and Prudential

### A. Breach of Contract Claims

Fortune brings two breach of contract claims against Ceridian: (1) breach of repair obligations contained in Section 2.1(a) of the lease and (2) breach of the lease's surrender clause, Section 9.2 of the lease. Prudential asserts these claims and adds a claim for breach of Section 2.2 of the lease. Ceridian argues that it is entitled to partial summary judgment on the breach of contract claims brought by Fortune and Prudential as they relate to the curtainwall, elevator system and plaza decks. The court grants Ceridian's motion and denies Fortune's motion.

**1. Lease Sections 2.1(a) and 9.2**

Section 2.1(a) of the lease provides:

> (a) Lessee acknowledges that it has received the Premises in good order and repair. Lessee, at its own expense, will maintain all parts of the Premises in good repair and condition, except for ordinary wear and tear, and will take all action and will make all structural and nonstructural, foreseen and unforeseen and ordinary and extraordinary changes and repairs which may be required to keep all parts of the Premises in good repair and condition (including, but not limited to, all painting, glass, utilities, conduits, fixtures and equipment, foundation, roof, exterior walls, heating and systems and other utilities, and all paving, sidewalks, roads, parking areas, curbs and gutters and fences) in as good a condition as they existed at the beginning of the Primary Term, ordinary wear and tear excepted. Lessor shall not be required to maintain, repair or rebuild all or any part of the Premises. Lessee waives the right to require Lessor to maintain, repair or rebuild all or any part of the Premises, or make repairs at the expense of Lessor pursuant to any Legal Requirement, agreement, covenant, condition or restrictions at any time.

(Dieke Aff., Ex. A, Dep. Ex. 123 at 5.) The relevant part of Section 9.2 requires Ceridian to "surrender the Premises to Lessor in the condition in which the Premises were originally received ... except for ordinary wear and tear." (Id. at 35.) Fortune and Prudential claim that these sections of the lease agreement require Ceridian to maintain the premises in "good order and repair," (Fortune's Mem. In Resp. to Ceridian's Mot. for Part. Summ. J. at 1), while Ceridian claims that the sections require it to maintain the premises in as good a condition as they existed at the

beginning of the lease, ordinary wear and tear excepted. (Ceridian's Reply Mem. Supp. Part. Summ. J. at 4). The court finds that the lease unambiguously requires Ceridian to maintain the premises in as good a condition as it existed at the beginning of the lease, except for ordinary wear and tear, and thus Ceridian did not breach the lease agreement with respect to the curtain wall, the plaza decks and elevator system.

The construction and effect of a contract is a question of law, unless a contract's terms are ambiguous. Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir. 1991); Servais v. T.J. Mgmt. of Minneapolis, Inc., 973 F. Supp. 885, 892 (D. Minn. 1997). A contractual term is ambiguous if it is susceptible to more than one interpretation. Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998) If an ambiguity exists, and extrinsic evidence is examined, the construction of a contract becomes a question of fact. Jacobs, 933 F.2d at 657. The court determines whether a contract is ambiguous as a matter of law. Boat Dealers' Alliance, Inc. v. Outboard Marine Corp., 182 F.3d 619, 621 (8th Cir. 1999). It "depends, not upon words or phrases read in isolation, but rather upon the meaning assigned to the words or phrases in accordance with the apparent purpose of the contract as a whole." Id. at 621 (citing Art Goebel, Inc. v. North Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997)).

In construing a contract, the court must "give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Goebel, 567 N.W.2d at 515; see also Snyder's Drug Store, Inc. v. Sheehy Properties, Inc., 266 N.W.2d 882, 884 (Minn. 1978)("[L]eases should be interpreted no differently than other writings; that is, leases should be construed so as to give effect to the intention of the parties."). To ascertain the parties intentions, the court must interpret the contract as a whole and attempt to harmonize all the contract's terms. See, e.g., Jacobs, 933 F.2d at 657; Servais, 973 F. Supp. at 892; Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn. 1990); Brookfield, 584 N.W.2d at 394; SO Designs USA v. Rollerblade, Inc., 620 N.W.2d 48, 53 (Minn. Ct. App. 2000); Republic Nat'l Life Ins. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979). The court gives the language of the contract its plain and ordinary meaning. See, e.g., id.; Brookfield, 548 N.W.2d at 394; Servais, 973 F. Supp. at 892; SO Design USA, 620 N.W.2d at 52. Because of the presumption that the parties intended the language used to have effect, the court attempts to avoid an interpretation of the contract that would render a provision meaningless. Chergosky, 463 N.W.2d at 526; Brookfield, 584 N.W.2d at 394.

In Centre Great Neck Co. v. Penn Encord, Inc., 715 N.Y.S.2d 71 (N.Y. Sup. Ct. 2000), a landlord sued a tenant and guarantor to recover for breach of a lease. In evaluating the lease, the court stated that "[w]here, as here, a lease contains clauses requiring the tenant to maintain the premises in 'good condition' and to surrender the premises in the same condition as at the commencement of the lease, the two clauses must be read together to determine the intent of the parties." Id. at 72 (citations omitted). Reading the clauses together, the court determined that "the subject lease required the tenant to keep the premises in a state of repair such that it could be returned to the plaintiff in as good a condition as it was in at the commencement of the lease." Id.

Similar to the lease agreement in Centre Great Neck, the lease agreement in this case provides that Ceridian "will maintain all parts of the Premises in good repair and condition, except for ordinary wear and tear, ... in as good a condition as they existed at the beginning of the Primary Term, ordinary wear and tear excepted." (Dieke Aff., Ex. A, Dep. Ex. 123 at 5.) The lease further requires Ceridian to "surrender the Premises to Lessor in the condition in which the Premises were originally received ... except for ordinary wear and tear." (Id. at 35.) As in Centre Great Neck, reading these two clauses together unambiguously shows that the parties intended Ceridian to maintain the premises in as

good a condition as they existed at the beginning of the lease term, ordinary wear and tear excepted. Put another way, the court must conclude that the phrase "in as good a condition as they existed at the beginning of the Primary Term" clearly modifies "good repair and condition" in Section 2.1(a) because the court must read the language of the contract as a whole. As the court in Centre Great Neck emphasized, "[i]f the plaintiff had intended the tenant to put the property in a condition better than it was in at the commencement of the lease, it could have expressly contracted for that result." Centre Great Neck, 715 N.Y.S.2d at 72.

Neither Fortune nor Prudential present any evidence that Ceridian breached its obligation to maintain the premises in as good a condition as they existed at the beginning of the lease, except for ordinary wear and tear, especially with respect to the curtain wall, the plaza decks and elevator system. They present no evidence that the curtain wall leakage has increased since 1985 beyond that which may be attributable to ordinary wear and tear. In fact, Fortune admits that its experts simply have no opinion on the matter.[1] (Fortune's Mem. in Resp. to Ceridian's Mot. for Part.

---

[1] Fortune Funding's curtain wall expert, Charles Kilper, testified that he had "no opinion" on the subject of whether the curtain wall leakage was better or worse in July 2000 than in July 1985." (Kilper Dep. at 36:20.) Prudential's curtain wall expert, Thomas Schwartz, testified as to the condition of the curtain wall in 1985 that, "I think what's accurate is to say that I don't know, having not been there in 1985, exactly what the condition was. And I've seen nothing that indicated to me the specifics that would (continued...)

Summ. J. at 11 n.47.) Likewise, neither Fortune nor Prudential present any evidence that the plaza decks are in worse condition than at the beginning of the lease term. Fortune's concrete expert even testified that he did not know the condition of the plaza decks in 1985. (Moutz Aff., Ex. OO, Brenner Dep. at 98:25-99:4.) Plaintiffs' experts further admit that the deterioration of the plaza decks is due to ordinary wear and tear. (Moutz Aff., Ex. OO, Brenner Dep. at 92-94, 96-98.) Moreover, plaintiffs present no evidence suggesting that the elevator system was not well maintained or that it is not in the condition that it was at the beginning of the lease, ordinary wear and tear excepted. Since Ceridian has no obligation to put the premises in better condition than it was when it first leased the premises in 1985 and since Ceridian is not responsible for ordinary wear and tear, the court concludes that Ceridian did not violate Sections 2.1(a) and 9.2 of the lease.

**2. Lease Section 2.2**

In its amended complaint, Prudential also asserts that Ceridian breached the lease agreement by violating Section 2.2. Specifically, Prudential claims that Ceridian made "additions or alterations" to the premises that were "not completed in good condition and workmanlike manner [sic] or that did lessen the Fair

---

[1](...continued) tell me whether it's exactly what I see now or something different." (Schwartz Dep. at 104:12-17.)

Market Value of the Leased Premises." (Prudential's First Am. Compl., ¶¶ 43-50.) Because Prudential presents no persuasive evidence to support this claim, the court grants Ceridian's motion for summary judgment on the claim as it relate to the curtain wall, elevator system and plaza deck.

**B. Fraudulent Misrepresentation**

Both Fortune and Prudential assert that Ceridian misrepresented the condition of the property in the Ceridian lease, in an "estoppel certificate" provided to Prudential on July 29, 1985 and in a letter to Fortune dated December 10, 1985. Ceridian moves for partial summary judgment on those claims.

To prevail on its fraud claim under Minnesota law, Fortune and Prudential must prove five elements of fraud: (1) Ceridian made a false representation of past or existing material fact susceptible of knowledge, (2) that the representation was made with knowledge of the falsity or made as of Ceridian's own knowledge without knowing whether it was true or false, (3) that the representation was made with intent and to induce plaintiffs to act in reliance, (4) that the representation caused plaintiffs to act in reliance and (5) that plaintiffs suffered damages as a result of the reliance. See Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986). Common law fraud claims are governed by a six-year statute of limitations. Minn. Stat. Ann. § 541.05(6) (2001). Under the statute, the cause of action accrues and triggers the

limitations period when the aggrieved party discovers the facts constituting the fraud. Klehr v. A.O. Smith Corp., 87 F.3d 231, 235 (8th Cir. 1996). "'[T]he facts constituting the fraud are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered.'" Id. at 235 (quoting Blegen v. Monarch Life Ins. Co., 365 N.W.2d 356, 357 (Minn. Ct. App. 1985). Here, the court finds that the facts raise a jury question as to whether Ceridian engaged in fraudulent misrepresentation. Moreover, for statute of limitations purposes, the court also finds that a material fact exists as to when any alleged fraud was or should have been discovered. See Klehr, 87 F.3d at 235 ("A plaintiff's due diligence in the statute of limitations context is ordinarily a question of fact."). The court therefore denies Ceridian's motion for partial summary judgment on the fraudulent misrepresentation claims brought by Fortune and Prudential.

### C. Statutory and Common-Law Waste

Fortune and Prudential also bring claims against Ceridian for statutory and common law waste and Ceridian moves for summary judgment on these claims as they relate to the curtain wall, elevator system and plaza deck. "Waste involves more than just ordinary depreciation, it involves negligence or intentional conduct which results in material damage to the property." Rudnitski v. Seely, 452 N.W.2d 664, 666 (Minn. 1990). The standard for recovery of common-law and statutory waste is the same, except

that a plaintiff may recover treble damages under Minn. Stat. § 561.17 (2001). "[T]he obligation to prevent waste may be affected by contract." King's Court Racquetball v. Dawkins, 62 S.W.3d 229, 233 (Tex. Ct. App. 2001); See Southern Real Estate and Financial Co. v. City of St. Louis, 758 S.W.2d 75, 80 (Mo. Ct. App. 1988)("the lease establishes what the lessee may do with the property, and that which is authorized by the lease is by definition either no waste at all or at most is waste authorized by the lessor.").

Here, as discussed, the lease imposed upon Ceridian an obligation to maintain the premises in the same condition that they existed at the beginning of the lease, ordinary wear and tear excepted. Plaintiffs present no evidence that Ceridian owed a duty of care beyond that contained in the lease and Ceridian clearly fulfilled its obligation to maintain the curtain wall, elevator system and plaza decks under the lease. Because no evidence suggests that Ceridian committed either statutory or common-law waste, the court grants Ceridian's motion for summary judgment on plaintiffs' statutory and common-law waste claims as they relate to the curtain wall, elevator systems and plaza decks.

**D. Breach of Fiduciary Duty**

Prudential asserts that a fiduciary relationship existed between plaintiffs and Ceridian and that Ceridian breached that fiduciary duty by not disclosing and preventing curtain wall

leakage. The court finds no persuasive evidence of a fiduciary duty between the parties and therefore grants summary judgment to Ceridian on Prudential's breach of fiduciary duty claim.

**1. Special Circumstances**

Federal courts look to state law to determine if a fiduciary relationship exists. H Enterprises Int'l, Inc. v. General Electric Capital Corp., 833 F. Supp. 1405, 1421 (D. Minn. 1993). Under Minnesota law, special circumstances must be present for a fiduciary relationship to exist. Special circumstances include situations where defendant knew or ought to have known that plaintiffs were placing their trust and confidence in defendant and depended on defendant to look out for their interests. May v. First National Bank, 427 N.W.2d 285, 289 (Minn. Ct. App. 1998); Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 623 (Minn. 1972)(finding no evidence to indicate that defendant ought to have known that plaintiff was placing her trust and confidence in defendant and was depending upon defendant to look out for her interests). The law clearly establishes that arms-length transactions do not create such special circumstances. See Faith Bible Christian Outreach Ctr. v. Warner, 201 F.3d 1020, 1021 (8th Cir. 2000)(finding no fiduciary relationship where lease was an arms-length transaction); American Computer Trust Leasing v. Boerboom Int'l, Inc., 967 F.2d 1208, 1212 (8th Cir. 1992)(finding no fiduciary duty to disclose where parties' relationship included

ordinary business transactions conducted at arms length); Shema v. Thorpe Bros., 62 N.W.2d 86, 91 (Minn. 1953)(holding no fiduciary relationship existed between vendor and purchaser where parties dealt at arms length).

Here, Prudential asserts that Ceridian breached a fiduciary duty when plaintiffs placed a special trust and confidence in Ceridian during the sale-leaseback and subsequent purchase and sale by Fortune. The facts, however, clearly establish that the sale-leaseback and subsequent purchase by Fortune were all arms-length transactions. Both parties to the UTF-Ceridian lease were sophisticated and represented by attorneys. (Moutz Aff., Ex. O at 18, 23, 49-50, 51-52, 73-74; Ex. R; Ex. T; Ex. S). Prudential, also a sophisticated party who was represented by counsel, describes its role in the sale-leaseback as "arms length." (Moutz Aff., Ex. V at 63, 66). Ceridian agrees that Prudential engaged in an arms-length transaction in the sale-leaseback. (See Ceridian's Mem. Supp. Part. Summ. J. at 12). Moreover, there is no evidence that Prudential "placed complete trust" in Ceridian or that Ceridian knew of such trust. H Enterprises, 833 F. Supp. at 1421-22. (Moutz Aff., Ex. V at 66). Ceridian therefore did not owe plaintiffs any fiduciary duty arising out of the arms-length relationship between these sophisticated parties.

Prudential nevertheless alleges that the lease agreement created an special relationship, giving Ceridian the sole authority to maintain and repair the premises, with the following language:

> Lessor shall not be required to maintain, repair or rebuild all or any part of the Premises. Lessee waives the right to require Lessor to maintain, repair or rebuild all or any part of the Premises, or make repairs at the expense of the Lessor pursuant to any legal requirement, agreement, covenant, condition or restriction at any time. (Prudential's Mem. In Resp. to Ceridian's Mot. for Part. Summ. J. at 26-27).

This language, however, creates no such special relationship. Instead, the language simply states that the lessor is not responsible for maintaining and repairing the premises.

Prudential also asserts that special circumstances arose from the lease's language providing that Ceridian "take all action and ... make all structural and nonstructural, foreseen and unforseen and ordinary and extraordinary changes and repairs which may be required to keep all parts of the Premises in good repair and condition...." The language, however, read in the context of the full sentence, does not create a fiduciary relationship, but simply requires Ceridian to maintain the premises in the same condition as they existed in the beginning of the lease, ordinary wear and tear excepted. Moreover, even if the court were to find that the language created a fiduciary duty, Ceridian fulfilled its fiduciary

obligations under the lease by maintaining the premises in the same condition as existed in 1985, except for ordinary wear and tear.

**2. Agency Relationship**

A fiduciary relationship can also arise under agency principles. See PMH Properties v. Nichols, 263 N.W.2d 801, 800 (Minn. 1978). Agency is "'thc fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" See Jurek v. Thompson, 241 N.W.2d 788, 791 (Minn. 1976)(quoting Restatement, Agency 2d 1). While Prudential asserts that Ceridian owed plaintiffs a fiduciary duty because Ceridian was plaintiffs' agent for purposes of making repairs required under the lease, (Prudential's First Am. Compl., ¶ 101-02), the evidence does not support this assertion. As Ceridian correctly points out, neither Fortune nor Prudential allege that Ceridian had the power to act on their behalf or to bind them by its actions. Moreover, plaintiffs present no evidence that they had the right to control Ceridian or that Ceridian submitted to such control. Further, neither Fortune nor Prudential contend that the lease contained a provision authorizing Ceridian to act as plaintiffs' agent. Because the court finds no fiduciary duty between the parties, the court grants Ceridian's motion for summary judgment on Prudential's breach of fiduciary duty claim.

**E. Negligent Misrepresentation**

Prudential and Fortune both bring claims for negligent misrepresentation. Only Prudential, however, admits that its negligent misrepresentation claim "is not viable" under Minnesota law. Because the court finds that Minnesota law does not support their claims for negligent misrepresentation against Ceridian, the court grants summary judgment for Ceridian on the issue.

To establish a claim of negligent misrepresentation, Fortune and Prudential must first establish that Ceridian owed them a duty of care. Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424 (Minn. Ct. App. 2000). In Minnesota, one making a representation is held to a duty of care when supplying information for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment. Safeco Ins. Co. v. Dain Bosworth Inc., 531 N.W.2d 867, 870 (Minn. Ct. App. 1995). The law, however, unequivocally establishes that "a negligent misrepresentation claim will not lie between parties to a commercial transaction negotiating at arms length." Travels Express Co., Inc. v. American Express Integrated Payment Sys. Inc., 80 F. Supp. 2d 1033, 1041 (D. Minn. 1999); Kellogg Square Partnership v. Prudential Ins. Co., 63 F.3d 699, 703 (8th Cir. 1995); Smith, 605 N.W.2d at 424; Safeco, 531 N.W.2d at 872. Because Ceridian clearly engaged in arms-length transactions with Fortune and Prudential, their claims for negligent

misrepresentation fail. The court therefore grants summary judgment for Ceridian on the matter.

**F. Minnesota Consumer Fraud Act**

Prudential and Fortune both assert claims under the Minnesota Consumer Fraud Act. Prudential, however, admits that its "consumer fraud claims are not viable under the law of the State of Minnesota..." (Prudential's Mem. in Resp. to Ceridian's Mot. for Part. Summ. J. at 2 n.1). While Fortune does not make such an admission, the court nonetheless finds that Fortune's claim also fails under Minnesota law and therefore grants Ceridian's motion for partial summary judgment on the Consumer Fraud Act claims brought by Fortune and Prudential.

A party asserting a claim under the Minnesota Consumer Fraud Act may only recover attorney fees, costs and damages under the Private Attorney General Statute, Minn. Stat. § 8.31, (3a). Ly v. Nystrom, 615 N.W.2d 302, 310-11 (Minn. 2000). In Ly, the court found that "[s]ince the Private AG Statute grants private citizens the right to act as a 'private' attorney general, the role and duties of the attorney general with respect to enforcing the fraudulent business practices laws must define the limits of the private claimant under the statute." Id. at 312. The court held that "the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public." Id. at 314. The court emphasized that it does not apply when fraud

occurs in a "single one-on-one transaction in which the ... misrepresentation ... was made only to [plaintiffs]." Id.

In Ly, appellant, the buyer of a restaurant, brought a Consumer Fraud Act claim, seeking the award of attorney fees and costs under the Private Attorney General Statute ("Private AG Statute"). The court found that "[a]ppellant was defrauded in a single one-on-one transaction in which the fraudulent misrepresentation, while evincing reprehensible conduct, was made only to appellant." Id. at 314. The court therefore denied appellant's claim for relief under the Private Attorney General Statute because the court concluded that "[a] successful prosecution of [appellant's] fraud claim does not advance state interests...." Id.

Here, as in Ly, Ceridian's alleged misrepresentations occurred in a one-on-one private real estate transaction. Neither Fortune nor Prudential present any evidence to prove that their cause of action benefits the public interest.[2] Thus, as in Ly, the court concludes that their claims for relief under the Private AG Statute fail because they do not benefit the public. The court therefore

[2] Fortune claims that the public interest analysis in Ly only applies to the recovery of attorney fees under the Private AG Statute. While some of the facts in Ly do pertain to the recovery of attorney fees, Ly's holding is clearly broader. The Minnesota Supreme Court unambiguously held that the Private AG Statute only applies when claimants demonstrate that their cause of action "benefits the public." Id. at 314. The court did not state that the statute only allows the recovery of attorney fees when claimants demonstrate a public interest. If the court had intended such a narrow holding, the court certainly would have so stated.

grants Ceridian's motion for summary judgment on the Consumer Fraud Act claim brought by Prudential and Fortune.

**III. Fortune's Motion for Summary Judgment Against Ceridian**

Fortune moves for partial summary judgment against Ceridian on the sole issue of the scope of Ceridian's repair and maintenance obligations under the lease agreement pursuant to which Ceridian occupied its corporate headquarters complex in Bloomington, Minnesota from August 1, 1985 through July 31, 2000. Fortune asks the court to determine that Ceridian's repair and surrender obligations under the lease included, if necessary, the obligation to rebuild or replace building components that were defective or became worn out during the term of the lease.

As already discussed, based upon the plain and unambiguous language of the repair and surrender obligations of the lease and the applicable case law, the court finds that the lease required only that Ceridian maintain the premises "in as good a condition as they existed at the beginning of the Primary Term, ordinary wear and tear excepted." (Dieke Aff., Ex. A, Dep. Ex. 123 at 5.) Ceridian's obligations did not include the obligation to repair or replace building components that were subject to ordinary wear and tear or that were in the same condition as they existed at the beginning of the lease term. In light of the lease's plain language, the court denies Fortune's motion for summary judgment.

**IV. Cross-Motions for Summary Judgment by Fortune and Prudential**

Intervenor-plaintiff Prudential moves for summary judgment, asking the court to hold that it has a valid and enforceable assignment of Fortune's claims for damage payments against Ceridian under the lease agreement between Fortune, as former landlord, and Ceridian, as former tenant. Fortune cross-moves for summary judgment, asking the court to determine that it has the sole right to its damages claim against Ceridian.

As Fortune correctly points out, Fortune asserts no interest in Prudential's fraud or misrepresentation claims, just as Prudential could not assert any interest in Fortune's fraud and misrepresentation claims, because these causes of actions belong to the respective individual parties. What is in dispute is who has the right to damages for the breach of contract and waste claims. However, because the court grants summary judgment for Ceridian on the breach of contract and waste claims, the dispute between Fortune and Prudential for any damages arising out of the claims is moot. The court therefore denies as moot the cross-motions for summary judgment by Prudential and Fortune.

**V. Prudential's Motion to Submit Supplemental Affidavit**

Finally, Prudential makes a motion to submit a supplemental affidavit in opposition to Ceridian's motion for partial summary

judgment pursuant to Federal Rule of Civil Procedure 56(f). After a review of the file, record and proceedings herein, the court grants Prudential's motion to submit the supplemental affidavit.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Ceridian's motion for summary judgment is granted on Counts 1-4 of Fortune's second amended complaint as it relates to the Tower curtain wall, the Tower elevators and the alleged leakage in the Tower plaza decks [Doc. No. 91];

2. Ceridian's motion for summary judgment is denied on Count 5 of Fortune's second amended complaint [Doc. No. 91];

3. Ceridian's motion for summary judgment is granted on Counts 6 and 7 of Fortune's second amended complaint [Doc. No. 91];

4. Ceridian's motion for summary judgment is granted on Counts 1-3, 6 and 7 of Prudential's first amended complaint as they relate to the Tower curtain wall, the Tower elevators and the Tower plaza decks [Doc. No. 91];

5. Ceridian's motion for summary judgment is denied on Count 4 of Prudential's first amended complaint [Doc. No. 91];

6. Ceridian's motion for summary judgment is granted on Counts 5, 8 and 9 of Prudential's first amended complaint [Doc. No. 91];

7. Fortune's motion for summary judgment against Ceridian is denied [Doc. No. 62];

8. Fortune's motion for summary judgment against Prudential is denied as moot [Doc. No. 63];

9. Prudential's motion for summary judgment against Fortune is denied as moot [Doc. No. 70]; and

10. Prudential's motion for submit a supplemental affidavit is granted [Doc. No. 99].

Dated: April 2, 2002

David S. Doty, Judge
United States District Court