00-1809 DSD/FLN

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 02-4031

---

| | | |
|---|---|---|
| Fortune Funding, LLC, a Florida Limited Liability Company, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Ceridian Corporation, a Delaware Corporation, | * | |
| | * | |
| Appellee. | * | |

---

Submitted: December 19, 2003
Filed: June 2, 2004

---

Before MORRIS SHEPPARD ARNOLD, LAY, and RILEY, Circuit Judges.

---

RILEY, Circuit Judge.

Fortune Funding, LLC (Fortune) sued Ceridian Corporation (Ceridian), alleging (1) Ceridian breached a lease agreement between Fortune and Ceridian (Lease); (2) committed waste of the leased property; and (3) in 1985, fraudulently misrepresented the leased property's condition. On cross-motions for summary judgment, the district court[1] granted partial summary judgment to Ceridian on

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

SCANNED
JUN 28 2004
U.S. DISTRICT COURT MPLS

Fortune's breach of contract and waste claims. The district court concluded a material issue of fact remained as to whether Ceridian fraudulently misrepresented the leased property's condition. After trial on the fraud claim, a jury found Ceridian had not made a false representation. Fortune appeals. We affirm.

## I. BACKGROUND

In 1971, Ceridian built a fourteen-story office tower (Tower) in Bloomington, Minnesota. An underground parking garage resides beneath the Tower, and an open plaza forms the parking garage's roof on the Tower's east and west sides.

Immediately after construction, Ceridian experienced problems with the glass curtain wall forming the Tower's exterior. The glass curtain wall leaked during rainstorms, and the glass forming the curtain wall began to crack and fog. Ceridian tried to remedy these problems, including caulking the glass and gaskets forming the curtain wall and injecting foam into the gaps at the glass curtain wall's base. In 1983, Ceridian settled with the glass curtain wall's designer, the glass manufacturer, and the general contractor for the problems associated with the glass curtain wall.

In 1985, to raise capital, Ceridian entered into a sale-leaseback transaction with United Trust Fund, LLC (UTF) for the Tower and the land on which the Tower sat (collectively, Property). After UTF purchased the Property, a UTF affiliate and Ceridian entered into the Lease. The Lease provided for a fifteen-year lease term. The Lease also included repair and maintenance, surrender, and net lease clauses. Later that year, UTF sold the Property to I. Reiss and Sons (Reiss). Reiss sold the Tower to Fortune, and Fortune became the lessor under the Lease. As part of the Reiss-Fortune transaction, Ceridian submitted an estoppel letter stating it was not in default under the Lease.

Approximately one month before the Lease expired, Fortune requested that Ceridian repair the Tower's glass curtain wall and plaza deck and also replace the

Tower's elevator system. Ceridian refused to make the repairs, contending the Property was in the same condition as it was at the beginning of the Lease, except for ordinary wear. After the Lease expired, Fortune sued Ceridian, alleging, *inter alia*, Ceridian breached the Lease's repair and maintenance and surrender clauses, committed common-law and statutory waste of the Tower and, in 1985, fraudulently misrepresented the Tower's condition.

On cross-motions for summary judgment, the district court concluded on the contract claim that (1) the repair and maintenance and surrender clauses only required Ceridian to maintain the Property in the same condition as it was in 1985, except for ordinary wear, and (2) Fortune failed to present evidence that Ceridian breached its repair and maintenance obligations. On the waste claims, the district court concluded Fortune failed to establish Ceridian owed a duty to maintain the Property other than the duty imposed by the Lease, and Ceridian fulfilled its repair and maintenance obligations under the Lease. Finding material issues of fact remained on Fortune's fraudulent misrepresentation claim, the district court set the fraud claim for trial.

At trial, Fortune attempted to present evidence of the glass curtain wall's condition from 1997 to 2000. The district court excluded Fortune's evidence, finding the evidence was irrelevant and would confuse the jury about the issues it would decide. The jury returned a verdict for Ceridian, finding Ceridian did not "falsely represent past or present material facts to [Fortune]." Fortune appeals, contending the Lease imposes an obligation upon Ceridian to make the requested repairs, the district court erred in dismissing its waste claim, and the district court abused its discretion in excluding evidence of the glass curtain wall's condition from 1997 to 2000.

## II. DISCUSSION

### A. Breach of Contract and Waste Claims[2]

"We review the district court's grant of summary judgment de novo." Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1027 (8th Cir. 2003). "We will affirm a district court's grant of summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . ,' demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)). "As we exercise our power under diversity jurisdiction, we must interpret the forum state's law." Id.

Under Minnesota law, general principles of contract construction apply to commercial leases. Carlson Real Estate Co. v. Soltan, 549 N.W.2d 376, 379 (Minn. Ct. App. 1996). We construe the Lease to give effect to the parties' intent as expressed in the Lease's language. Pettit Grain & Potato Co. v. N. Pac. Ry. Co., 35 N.W.2d 127, 130 (Minn. 1948). The Lease's language is construed according to its "commonly accepted meaning." Id. We also interpret the Lease to give effect to all provisions and avoid an interpretation that renders a clause meaningless. Oleson v. Bergwell, 283 N.W. 770, 772-73 (Minn. 1939). Extrinsic evidence is used to interpret the Lease only when a clause in the Lease is ambiguous. Noreen v. Park Const. Co., 96 N.W.2d 33, 36 (Minn. 1959) (citation omitted). A clause is ambiguous if the clause is susceptible of more than one reasonable interpretation. Groves v. Dakota Printing Servs., Inc., 371 N.W.2d 59, 62 (Minn. Ct. App. 1985).

Section 2.1(a) of the Lease, the repair and maintenance clause, governs Ceridian's repair obligations:

---

[2]Because Fortune and Ceridian agree our disposition of the breach of contract claim resolves the waste claim, we only discuss the district court's grant of summary judgment on Fortune's contract claim.

> [Ceridian] acknowledges that it has received the [Property] in good order and repair. [Ceridian], at its own expense, will maintain all parts of the [Property] in good repair and condition, *except for ordinary wear and tear*, and will take all action and will make all structural and nonstructual, foreseen and unforeseen and ordinary and extraordinary . . . repairs which may be required to keep all parts of the [Property] in good repair and condition (including, but not limited to, . . . glass, . . . fixtures and equipment, . . . and all paving . . .) in as good a condition as they existed at the beginning of the [Lease's] Term, *ordinary wear and tear excepted*. [Fortune] shall not be required to maintain, repair or rebuild all or any part of the [Property].

(Emphasis added). According to its plain, unambiguous language, section 2.1(a) does not impose a duty on Ceridian to make repairs attributable to ordinary wear. The clauses "ordinary wear and tear excepted" and "except for ordinary wear and tear" describe and limit the general repair duty imposed by section 2.1(a).

The Minnesota Supreme Court in State Mutual Life Assurance Co. v. Oliver Iron Mining Co., 195 N.W. 632, 634-35 (Minn. 1923), concluded similar language relieved a lessee from making repairs attributable to ordinary wear. The lease in State Mutual Life contained the following language:

> [T]he lessees do hereby further covenant . . . that they will . . . keep . . . said building, both inside and outside, and appurtenances, in good and substantial repair . . . and in as good condition as said premises shall be on the completion of said building, *ordinary wear and tear alone excepted*. . . . [W]hile the lessor is not to be considered hereby bound to make any repairs or improvements at its own expense which the lessees are required to make . . . it shall make such repairs as the lessees are not hereby required to make, it being understood that the lessees shall keep the building in good repair *not including, however, ordinary wear and tear*.

Id. at 633 (emphasis added). After parts wore out in the building's elevator, the lessor sued the lessee for the cost of the repairs. Construing the above language, the Minnesota Supreme Court concluded "[t]he lessees were not required to make repairs necessitated by ordinary wear." Id. at 634. The court reasoned "that the lessor assumed the obligation to make the repairs and replacements which became necessary by reason of ordinary wear incidental to the lessees' proper use of the elevators." Id. at 635. Similarly, section 2.1(a)'s second sentence does not obligate Ceridian to make repairs caused by ordinary wear, and, therefore, Fortune assumed this obligation.

Section 2.1(a)'s first sentence does not alter our construction, although Fortune contends this first sentence is controlling. The first sentence acknowledges Ceridian received the Property in good repair. In the context used, "good order and repair" must mean the Property's condition at the beginning of the Lease. As noted above, the second sentence requires Ceridian to maintain the Property "in as good a condition as [it] existed at the beginning of the [Lease's] Term" and in "good repair." This clearly evidences an intent by the parties that "good order and repair" refers to the condition of the Property at the beginning of the Lease, regardless of the Property's condition. Otherwise, Ceridian would be required to improve the Property, if the Property's condition were not in good repair at the beginning of the Lease. If Ceridian must improve the Property, then the first part of section 2.1(a)'s second sentence, requiring Ceridian to maintain the Property in good repair, would create an internal conflict with the balance of the second sentence of section 2.1(a). However, any internal conflict in the Lease's language is avoided if "good order and repair" means the Property's condition at the beginning of the Lease.

Section 9.2 of the Lease, the surrender clause, states:

> Upon the expiration or termination of [the Lease, Ceridian] shall surrender the [Property] to [Fortune] in the condition in which the

> [Property was] originally received from [Fortune], except as repaired, rebuilt, restored, altered or added to as permitted or required hereby and <u>*except for ordinary wear and tear*</u>.

(Emphasis added). Section 9.2 requires Ceridian to return the Property to Fortune in the same condition Ceridian received it in 1985, except for ordinary wear. The clause "except for ordinary wear and tear" clearly limits Ceridian's general duty to return the Property in the same condition as Ceridian received it.

Finally, requiring Ceridian to make ordinary wear repairs would render the clauses "except for ordinary wear and tear" and "ordinary wear and tear excepted" meaningless. As Ceridian argues, Fortune's interpretation would modify Ceridian's repair duty to require surrender of the Property in its original condition *regardless* of ordinary wear and tear. Such an interpretation is contrary to the canons of contract construction, and would compel us to rewrite the Lease, which we will not do.

The Lease's silence on who is to complete ordinary wear repairs during the lease term does not affect our construction. While the Lease does not obligate either party to undertake such repairs, the Lease does not prohibit a party from undertaking such repairs. A business lessee would be motivated to make ordinary wear repairs because the lessee would normally want to keep the premises attractive and safe for its customers, clients, and employees. Further, the Lease's silence on who is legally obligated to make ordinary wear repairs during the lease term necessarily implies the lessor will be obligated to make such repairs at lease termination, presumably because the lessor, as the possessory owner, would want to improve its chances of reletting the Property.

Fortune argues the Lease imposes an all-encompassing repair duty on Ceridian, because Fortune and Ceridian intended the Lease to be a triple net lease. Fortune contends a lessee makes all repairs under a triple net lease. Fortune argues the net

lease clause evidences this intent. The net lease clause states "[t]his is a net lease" and limits the parties' rights and obligations under the Lease, but does not explicitly limit or expand either parties' repair duties.[3] Assuming, *arguendo*, the language in the net lease clause is sufficient to demonstrate the parties intended the Lease to be a triple net lease and triple net leases generally require the lessee to make all repairs, the net lease provision does not change Ceridian's duty of repair. Under Minnesota law, if a conflict exists between two contract provisions, a contract's specific term controls over a general term. Medtronic, Inc. v. Convacare, Inc., 17 F.3d 252, 255 (8th Cir. 1994) (citing Burgi v. Eckes, 354 N.W.2d 514, 519 (Minn. Ct. App. 1984)). Here, the general term, the net lease clause, would conflict with the specific term, the repair and maintenance clause. Due to this conflict, the repair and maintenance clause controls and defines Ceridian's repair and maintenance obligations, excepting ordinary wear and tear.

---

[3]Specifically, the net lease clause provides:

> This is a net lease and, any present or future law to the contrary notwithstanding, shall not terminate except as otherwise expressly provided herein, nor shall [Ceridian] be entitled to any abatement or reduction (except as otherwise expressly provided herein), set-off, counterclaim, defense or deduction with respect to any Basic Rent, additional rent or other sums payable hereunder, nor shall the obligations of [Ceridian] hereunder be affected (except as otherwise expressly provided herein), by reason of: any damage to or destruction of the [Property]; any taking of the [Property] or any part thereof by condemnation or otherwise; any prohibition, limitation, restriction or prevention of [Ceridian's] use, occupancy or enjoyment of the [Property], or any interference with such use, occupancy or enjoyment by any person; any eviction by paramount title or otherwise; any default by [Fortune] hereunder or under any other agreement; the impossibility or illegality of performance by [Fortune, Ceridian] or both; any action of any governmental authority; or any other cause whether similar or dissimilar to the foregoing.

Because we conclude the district court correctly interpreted the repair duties imposed on Ceridian under the Lease, we affirm the district court's grant of summary judgment to Ceridian on Fortune's contract and waste claims. As Fortune does not challenge the district court's conclusion that Fortune failed to present any evidence that Ceridian breached its repair and maintenance obligations under the Lease as interpreted by the district court, we do not review this aspect of the district court's summary judgment decision. See Am. River Transp. Co. v. Paragon Marine Servs., Inc., 329 F.3d 946, 948 (8th Cir. 2003) (noting arguments not raised in first appellate brief are waived).

**B. Exclusion of Evidence**

At the jury trial on the fraud claim, Fortune offered no evidence of any ordinary wear and tear on the Property or what the Property's condition was in 1985. But Fortune attempted to introduce evidence of the glass curtain wall's condition from 1997 to 2000 (specifically, a 1998 report) to demonstrate Ceridian, in 1985, falsely represented the glass curtain wall's condition. The district court determined the evidence was too remote and not relevant to the condition in 1985, and also excluded this evidence as confusing and potentially misleading to the jury under Federal Rule of Evidence 403 (Rule 403). "The district court has broad discretion in deciding whether to admit evidence at trial. We will reverse the district court only for a clear and prejudicial abuse of that discretion." Jones v. TEK Indus., Inc., 319 F.3d 355, 360 (8th Cir. 2003).

The evidence Fortune sought to admit has little, if any, probative value. Fortune contended Ceridian fraudulently misrepresented the glass curtain wall's condition when it entered into the sale-leaseback transaction in 1985. The evidence Fortune attempted to admit concerned the glass curtain wall's condition from 1997 to 2000. The glass curtain wall's condition twelve to fifteen years after the sale-leaseback transaction has virtually no probative value without comparative evidence of the Property's condition in 1985, and the effects of ordinary wear and tear on the

glass curtain wall's condition over the years. This 1997-2000 evidence, standing alone, is obviously too remote.

Fortune maintains the evidence had some relevance to contradict Ceridian's interrogatory answers. In one answer to an interrogatory, Ceridian declared the glass curtain wall's condition was the same or better in 2000 than in 1985. However, in another interrogatory answer, Ceridian stated the glass curtain wall's condition was better in 2000 than in 1985, except for ordinary wear and tear. The admissions from any conflict between the two interrogatories do not substantially increase the probative value of the evidence.[4]

The potential of confusing the critical issues before the jury substantially outweighs any probative value of Fortune's evidence. Under Rule 403, a district court may exclude evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The relevant inquiry at trial was the glass curtain wall's condition in 1985, not 1997, and not whether Ceridian properly maintained the Property under the Lease. Fortune's evidence would have focused the jury's attention on the glass curtain wall's condition in 1997 or Ceridian's efforts to maintain the Property, potentially imposing liability on Ceridian (1) for the condition of the glass curtain wall in 1997 or at the end of the Lease's term; or (2) for maintenance problems. We have already rejected this theory of recovery. The district court did not abuse its broad discretion in excluding this evidence.

---

[4]To the extent Fortune argues the doctrine of judicial estoppel renders the evidence admissible, we disagree. "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." Hossaini v. W. Mo. Med. Ctr., 140 F.3d 1140, 1142 (8th Cir. 1998). Because Fortune has failed to demonstrate admitting the evidence on the glass curtain wall's condition from 1997 to 2000 would further the doctrine's purpose, we reject Fortune's contention.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of partial summary judgment to Ceridian and the district court's exclusion at trial of Fortune's evidence on the fraud claim.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE
ROOM 24.329
111 S. 10TH STREET
ST. LOUIS, MISSOURI 63102

MICHAEL E. GANS
Clerk of Court

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 23, 2004

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415

Re: 02-4031 Fortune Funding vs. Ceridian Corp.

Dear Clerk:

The mandate of this Court is being sent to the clerk of the district court, together with a receipt. The clerk of the district court is requested to sign, date, and return the receipt to this office.

Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

Michael E. Gans
Clerk of Court

mer

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)
---------------------------------------
cc: Honorable David S. Doty
Gary Arthur Van Cleve
Christopher J. Deike
Steven J. Wells
Randall R. Frykberg

District Court/Agency Case Number(s): CIV 00-1809 DSD/FLN